UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GABRIEL GRIFFIN, on behalf of himself as well as on behalf of his infant G.G. Jr., as natural parent and guardian as well as next friend,<br><br>Plaintiffs,<br><br>v.<br><br>ASSISTANT DISTRICT ATTORNEY JOHN AND/OR JANE DOE,<br>RONALD VILLAGOMEZ,<br>KEITH GARLAND, JR.,<br>JOHN LUEBBE, JR., HOWARD JOPLIN,<br>POLICE OFFICER(S) JANE AND/OR JOHN DOE(S),<br>DETECTIVE MARY SCHMITZ,<br>COURT REPORTER JANE DOE(S),<br>JOHN DOES, and JANE DOES<br><br>Defendants. | Case No. 11-CV-870-JPS<br><br><br><br><br><br><br>ORDER |

On September 15, 2011, *pro se* plaintiff Gabriel Griffin, on behalf of himself and his infant son, G.G. Jr., filed suit claiming that state, county, and city officials violated his and his son's civil rights. Plaintiffs seek declaratory and injunctive relief as well as monetary damages. (Docket #1). The defendants include: the Milwaukee County Circuit Court; a Circuit Court Judge; three Assistant District Attorneys; four City of Milwaukee police officers; one police detective; Jane and/or John Doe assistant district attorneys and police officers; a Jane Doe court reporter; other Jane and/or John Does; and unknown third parties who acted in collusion with the defendants.

On October 28, 2011, the court issued an order dismissing claims against the Milwaukee County Circuit Court, the Judge, and the three Assistant District Attorneys. (Docket #6). Presently before the court are two motions for summary judgment: one filed on behalf of the several John and Jane Does ("Doe defendants") (Docket #26), and one filed by defendant police officers and detective ("police defendants"). (Docket #31). Also before the court is plaintiffs' motion to strike the defendants' motions for summary judgment and affidavits. (Docket #43). For the reasons explained below, plaintiffs' motion to strike will be denied, and defendants' motions for summary judgment will be granted.

1.   Facts

The court adopts the following facts as true.[1] Officers Ronald Villagomez, John Luebbe, Howard Joplin, Keith Garland, and Detective Mary Schmitz are employed by the City of Milwaukee in the Milwaukee Police Department. Proposed Fact ("PF") (Docket #41) ¶¶ 1, 3, 29, 9, 37. On April 17, 2011, Officers Villagomez and Luebbe were dispatched to a residence on North 12th Street in Milwaukee to respond to a call by Dewonna Tucker regarding a complaint of battery domestic violence. PF ¶ 4. Officer Villagomez interviewed Ms. Tucker, who stated that her ex-boyfriend, plaintiff Gabriel Griffin, kicked in the doors to her house, battered her, and left with their 4-year-old son. PF ¶¶ 5,6. Ms. Tucker stated that Griffin punched her three times in the face, causing pain, swelling, bleeding, and a

---

[1] Pursuant to Civil L.R. 56(a)(1)(A), any factual assertion in the affidavits, declarations, or other admissible evidence submitted by the defendants will be accepted by the court as being true unless plaintiffs contradicted the factual assertion. Defendants complied with the notification requirements of this rule. Notice to Pro Se Plaintiff (Docket #42).

cut to her upper lip. PF ¶ 7. Both Officers Villagomez and Luebbe observed two damaged doors and the cut to Ms. Tucker's lip. PF ¶ 8. Officers Garland and Valuch were also dispatched to North 12th Street in Milwaukee to assist in the investigation. PF ¶ 10. In the course of their investigation, Officers Garland and Valuch went to a residence on North Richards Street in Milwaukee; there, Officer Garland spoke to Griffin's mother, who reported that she had not seen Griffin and that he no longer lived there. PF ¶¶ 11, 12. The next day, April 18, 2011, Officers Garland and Valuch went to a residence on North 83rd Street in Milwaukee to locate Griffin, and spoke with an individual who identified himself as Aaron Griffin, the plaintiff's brother. PF ¶ 13. Aaron Griffin stated that he had been present at Ms. Tucker's residence the day before and that Gabriel Griffin and Ms. Tucker argued, but he did not see any physical fights. PF ¶ 14.

Also on April 18, 2011, Officers Luebbe and Villagomez went to Ms. Tucker's home to schedule a review of her case with the Assistant District Attorney; upon arrival, they saw Griffin in Ms. Tucker's home. PF ¶¶ 17, 18. Officers Luebbe and Villagomez took Griffin into custody. PF ¶ 19. Griffin did not resist arrest or struggle; he placed his hands behind his back and Officer Villagomez employed only that physical force necessary to place handcuffs on Griffin. PF ¶¶ 20-23. Villagomez sought to interview Griffin about the incident with Ms. Tucker, but did not ask any questions when Griffin stated he had nothing to say and requested his attorney. PF ¶ 24. Griffin did not struggle when Officers Luebbe and Villagomez took Griffin to their car and to the District 5 police station. PF ¶ 25.

Griffin never complained about any injury and never made a request to Officers Villagomez or Luebbe for medical care. PF ¶¶ 26, 27. Griffin's

booking records do not reveal any cuts or bruises on his face at the time of booking; the records indicate that Griffin was asked if he had any injuries or medical issues, and that Griffin answered in the negative. PF ¶¶ 35, 36.

That same day, April 18, 2011, Officer Joplin attempted to interview Griffin at the District 5 police station. PF ¶ 31. Griffin told Officer Joplin he had nothing to discuss, and Joplin did not attempt to question him further concerning the incident that resulted in Griffin's arrest. PF ¶¶ 32, 33.

Officers Villagomez, Garland, Luebbe, and Joplin treated Griffin in the same manner that they would treat any individual of another race under such circumstances. PF ¶¶ 28, 16, 34.

Detective Schmitz was assigned to the Investigative Management Division and among her responsibilities was the signing of criminal complaints as complainant. PF ¶ 37. Detective Schmitz reviewed reports prepared by members of the Milwaukee Police Department in the routine course of their duties; in Schmitz's experience, the reports were prepared by individuals who were truthful and trustworthy. PF ¶¶ 38, 39. Detective Schmitz signed the criminal complaint against Griffin in April 2011 based on the Milwaukee Police Department reports and a certified copy of the earlier judgment that she obtained. PF ¶ 41. Detective Schmitz had no personal contact with Griffin and was not present at his arrest. PF ¶ 41.

2. Plaintiffs' "Response Objection and Motion to Strike All Defendants' Motion[s] For Summary Judgment & Affidavits"

Plaintiffs responded to the defendants' summary judgment motions with a document styled as an objection and a motion to strike the defendants'

motions and affidavits. (Dockets #43, #44[2]). In this filing, plaintiffs set out several plainly incorrect statements of law and fact. Preliminarily, plaintiffs seek to strike the supporting affidavits because they are not sworn; the court has reviewed the affidavits and finds that each is properly sworn. Plaintiffs also contend that the exhibits are not certified as authentic or based on personal knowledge; the court has reviewed the affidavits and concludes that this contention is incorrect. Plaintiffs further claim that defendants did not give plaintiffs "the mandated ten day notice advance notice [sic] requirement prior to filing for a motion for summary judgment." Plaintiffs cite no law in support of any notice requirement prior to filing a motion for summary judgment, and, indeed, no such requirement exists. Plaintiffs further state that defendants fail to meet their burdens of proof, and that there exist material disputed facts; plaintiffs offer neither argument nor evidence in support of their statements.

To the extent that the document is understood as a motion to strike defendants' motions for summary judgment, it is denied as unsupported by law or by the filings in this case. To the extent that the document states "objections" to the motions for summary judgment (i.e., regarding the burden of proof and alleged existence of disputed material facts), those "objections" are denied as simply stating the legal standard the court will apply when assessing the defendants' motions for summary judgment.

3.   Motion For Summary Judgment - Statement of Law

The general standard for assessing motions for summary judgment applies, namely: "The court shall grant summary judgment if the movant

---

[2]The document was apparently docketed twice, and therefore has two docket entry numbers.

Page 5 of 14

Case 2:11-cv-00870-JPS   Filed 01/18/13   Page 5 of 14   Document 49

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where, as in this case, the moving party is the defense, "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257.

4.      Motion For Summary Judgment - Doe Defendants

In the motion for summary judgment filed on behalf of the Doe defendants, counsel argues that the complaint must be dismissed because plaintiffs have not made reasonable efforts to learn the names of the unidentified defendants. Doe Defendants' Motion Brief (Docket #27) at 2. Counsel argues that Rule 56 mandates summary judgment where the "pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," and maintains that plaintiff's failure to name all of the defendants[3] entitles them to judgment as a matter of law. Doe Defendants' Motion Brief at 3 (quoting Fed. R. Civ. Pro. 56(a)).

The court agrees that the Doe defendants should be dismissed from this lawsuit. Permitting the use of fictitious names for parties is within the

---

[3]Federal Rule of Civil Procedure 10(a) provides, in part: "The title of the complaint must name all the parties." Fed. R. Civ. Pro. 10(a).

discretion of the court. *K.F.P. v. Dane County*, 110 F.3d 516, 519 (7th Cir. 1997). Counsel is correct to draw the court's—and the plaintiffs'—attention to the requirement that plaintiffs name all defendants against whom they wish to proceed. Plaintiffs filed their complaint in September of 2011 and have had ample time to discover and name any other defendants. The motion for summary judgment filed on behalf of the Doe defendants was filed in October of 2012, further nudging plaintiffs to specify the parties to their suit. Plaintiffs' response does not address the issue. It was "incumbent upon" plaintiffs to name the defendants to their suit; plaintiffs' failure to do so yields the result that plaintiffs' "claim[s] against the Doe Defendants cannot survive summary judgment." *Id.* The motion for summary judgment filed on behalf of the Doe defendants will be granted.

5.      Motion for Summary Judgment - Police Defendants

Plaintiffs' complaint contains a section describing the alleged violations committed by each defendant (Compl. at 15-21), and a section asserting the legal basis for his claims (Compl. at 27-36). Plaintiffs state eight[4] legal bases for relief, but because their claim of "conspiracy to interfere with civil rights" appears twice, they actually state seven claims. While the two sections of plaintiffs' complaint are not exactly symmetrical, the court has an obligation to construe a *pro se* complaint liberally, *Sizemore v. Williford*, 826 F.2d 608, 610 (7th Cir. 1987), and thus endeavors to read the sections in tandem to discover and assess plaintiffs' legal claims.

---

[4]Plaintiffs also omitted a claim number seven, so their eight claims are numbered one through six, eight, and nine. To ensure there is no confusion, this Order utilizes the numbering from the complaint.

### 5.1 Plaintiffs' Assertions Regarding False Documents

Plaintiffs state claims against several defendants related to false documents. Plaintiffs allege that Officers Villagomez and Garland "assisted in perjured and false documents." Compl. at 18. They further allege that Detective Schmitz "swore under oath to a fraudulent criminal complaint" and "fraudulently stated under oath that the plaintiff is a repeater."[5] Compl. at 19. Plaintiffs reference false documents under Count Three of their complaint, in which they assert a claim of conspiracy, in violation of 42 U.S.C. § 1985(3). They write, "…defendants conspired to deny constitutional and protected federal rights of the Plaintiffs' including but not limited to perjury, fraudulent documents, sham prosecution, mock trial, etc." Compl. at 31. Plaintiffs state further claims under Section 1985 in Count Nine of their complaint.

To prevail on a claim that individuals have conspired to deny constitutional rights under Section 1985(3), "a plaintiff must establish that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' exists." *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1485-86 (7th Cir. 1985) (*quoting Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). In this case, the facts accepted by the court, *see* note 1, *supra*, establish that Officers Villagomez and Garland treated Griffin in the same manner that they would treat any individual of another race under such circumstances. PF ¶¶ 28, 16. The facts further establish that Detective Schmitz signed the criminal complaint based on reports presented to her from the Milwaukee Police Department, and that she obtained a certified copy of

---

[5]Plaintiff appears to be referring to his status as a repeat offender.

Griffin's earlier judgment to support the repeat offender status. PF ¶¶ 40, 41. On the record before the court, the court concludes that defendants have shown the plaintiffs cannot meet their burden to prove there was a "racial, or perhaps otherwise class-based, invidiously discriminatory animus." There are no material facts in dispute, and thus defendants are entitled to summary judgment of plaintiffs' claims regarding conspiracy to falsify documents.

Plaintiffs also assert that Officer Luebbe "failed to prevent the unlawful acts of Defendant Villagomez and assisted in a cover-u[p]." Compl. at 19. This claim appears to relate to Count Four of plaintiffs' complaint, in which plaintiffs allege a violation of 42 U.S.C. § 1986. Compl. at 31-32. Plaintiffs assert that defendants "fail to report [ ] actions [undertaken in conspiracy] and continue to conspire to assist in cover up of such unlawful actions." Compl. at 32. Because plaintiffs' Section 1985 claims fail, their Section 1986 claims fail as a matter of law. *Smith v. Gomez*, 550 F.3d 613, 617-18 (7th Cir. 2008) (*citing Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992)). That is, because the court concludes that there was no conspiracy, there can also be no liability for neglect to prevent a conspiracy. Therefore, defendants are entitled to summary judgment of plaintiffs' claims of failing to prevent the falsification of documents.

Though not stated on these terms, there is a chance that plaintiffs seek to state a claim that his prosecution on the basis of the allegedly falsified documents violated his due process rights. The Seventh Circuit Court of Appeals has held that allegations of false evidence or testimony are "in essence" claims for malicious prosecution, *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir.2003), and that plaintiffs "cannot state a due process claim by combining what are essentially claims for false arrest under the Fourth

Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment." *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009). Additionally, existence of probable cause for arrest is an "absolute bar" to a claim for malicious prosecution. *Schertz v. Waupaca County*, 875 F.2d 578, 583 (7th Cir. 1989). Thus, if the officers had probable cause for arrest, any due process claims arising from the alleged falsification of documents are barred.

The court concludes that the Officers had probable cause to arrest Griffin in this instance. "Probable cause for an arrest exists if, at the time the arrest was made, the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to believe that an offense was committed." *Simkunas v. Tardi*, 930 F.2d 1287, 1291 (7th Cir. 1991). Here, Ms. Tucker told Officers Villagomez and Luebbe that Griffin kicked in the doors to her house, battered her, and left with their 4-year-old son. PF ¶¶ 5,6. Ms. Tucker stated that Griffin punched her three times in the face, causing pain, swelling, bleeding, and a cut to her upper lip. PF ¶ 7. Both Officers Villagomez and Luebbe observed corroborating evidence in the form of two damaged doors and the cut to Ms. Tucker's lip. PF ¶ 8. These facts were sufficient to constitute probable cause for Griffin's arrest because the information from Ms. Tucker, especially in light of the physical evidence the officers witnessed, was sufficient to lead the police officers to believe that an offense was committed.

Defendants are entitled to summary judgment on all of plaintiffs' claims related to falsified documents.

5.2     Plaintiffs' Assertions Regarding Excessive Force

Plaintiffs assert that Officer Villagomez "committed torture against Plaintiff Gabriel Griffin." Compl. at 18. This assertion appears to correspond to Count One of plaintiffs' complaint, in which they assert claims under 42 U.S.C. § 1983. Compl. at 28-29. This count asserts violations of plaintiffs' right to substantive due process (due to a violation of bodily integrity), equal protection (due to "unjustifiable assaults by police and are charged [sic] with crimes to cover up the beating"). Compl. at 28. Plaintiffs' also assert an Eighth Amendment violation on the grounds that some defendants knew other defendants were committing assault, and that they did not intervene. Compl. at 29.

To establish a claim for excessive use of force, plaintiffs must show that the officer's use of force was "objectively unreasonable under the circumstances." *Thompson v. Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Because the facts do not support plaintiffs' claim that Griffin was subjected to unreasonable force, each of his constitutional claims fail. In this case, the facts accepted by the court, *see* note 1, *supra*, establish that Griffin did not resist arrest or struggle; he placed his hands behind his back and Officer Villagomez employed only that physical force necessary to place handcuffs on Griffin. PF ¶¶ 20-23. Griffin also did not struggle when Officers Luebbe and Villagomez took Griffin to their car and to the District 5 police station. PF ¶ 25. Further, Griffin never complained about any injury, Griffin's booking records do not reveal any cuts or bruises on his face at the time of booking, and the records indicate that Griffin was asked if he had any injuries or medical issues, and that Griffin answered in the negative. PF ¶¶ 26, 35, 36. Absent any contest of these facts or any affirmative showing

that there are genuine disputes to the facts, plaintiffs cannot sustain claims for violation of bodily integrity under substantive due process or violation of the equal protection clause. Additionally, because the facts show that there was no assault committed against Griffin, his claim for failure to intervene to prevent said assault similarly fails. Defendants are entitled to summary judgment on these claims.

### 5.3 Plaintiffs' Assertions Regarding Failure to Provide Medical Attention

Plaintiffs assert that Officer Villagomez "did not provide or seek medical attention for plaintiff," and that Officer Luebbe "denied medical attention to Plaintiff Gabriel Griffin." Compl. at 18, 19. In Claim Eight of the complaint, plaintiffs assert that defendants were deliberately indifferent to his serious medical needs, in violation of the eighth amendment.

To state a claim for failure to provide medical care, plaintiffs must show that defendants were inattentive to serious injury or signs of serious injury. *Brownell v. Figel*, 950 F.2d 1285, 1290 (7th Cir. 1991). In this case, the facts accepted by the court, *see* note 1, *supra*, establish that Griffin never complained about any injury and never requested Officers Villagomez or Luebbe for medical care. PF ¶¶ 26, 27. Griffin's booking records do not reveal any cuts or bruises on his face at the time of booking; the records indicate that Griffin was asked if he had any injuries or medical issues, and that Griffin answered in the negative. PF ¶¶ 35, 36. On the record before the court, absent any contest of these facts or any affirmative showing that there are genuine disputes to these facts, the court can only conclude that defendants were not inattentive to signs of a serious injury and are entitled to summary judgment of this claim.

### 5.4 Plaintiffs' Additional Assertions Against Defendants

Plaintiffs assert that Officer Joplin "ordered several defendants to partake in the unlawful and unconstitutional acts." Compl. at 19. This claim is derivative of plaintiffs' other claims of "unlawful and unconstitutional acts." Because the court has concluded that defendants are entitled to summary judgment of plaintiffs' claims that defendants violated the law and Constitution, the claim that Officer Joplin is liable for ordering them to commit those acts fails as a matter of law. Defendants are, therefore, entitled to summary judgment of that claim.

Plaintiffs also assert that each of the police defendants "has misuse of [sic] power posse by virtue of state law, which is made possible only because the wrongdoer is clothed with the authority of state law committed in fulfillment of tasks assigned to it." Compl. at 18, 19. This statement does not appear in the section of plaintiffs' complaint laying out their legal claims. The court is unable to decipher any independent bases for liability in this claim.

Accordingly,

IT IS ORDERED that plaintiffs' motion to strike (Docket #43) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the Doe defendants' motion for summary judgment (Docket #26) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the police officers' and detective's motion for summary judgment (Docket #31) be and the same is hereby GRANTED; and,

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED on its merits, together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of January, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge